IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |  |
|---|---|---|
| **EVAN GAHR**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 1:19-cv-02675 |
| | ) | |
| **HERITAGE FOUNDATION,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT THE HERITAGE FOUNDATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SANCTIONS

Defendant The Heritage Foundation ("Heritage"), by and through its undersigned counsel, hereby files this Memorandum of Points and Authorities in Support of its Motion for Sanctions. This now-dismissed lawsuit was one of several frivolous lawsuits that *pro se* Plaintiff Evan Gahr ("Gahr") has filed against Heritage and its employees not to advance his legal rights, but to pursue a harassment campaign. Gahr's misconduct and abuse of the legal system is beyond the pale and non-monetary relief has not dissuaded him. The Court should impose sanctions.

### I.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS OF RULE 11

On November 14, 2019, Heritage sent a copy of its Motion for Sanctions to Gahr accompanied by a letter explaining that Heritage intended to seek sanctions against Gahr for filing a lawsuit for the improper purpose of harassing the defendants and for filing causes of action that were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. (See Declaration of Daniel E. Farrington ("Farrington Decl."), attached hereto as Exhibit 1, at ¶ 2, November 14, 2019 Letter and Motion from D. Farrington to E. Gahr attached thereto as Exhibit A.) As required by Fed. R. Civ P. 11,

1

Heritage informed Gahr that he had twenty-one days to withdraw or correct the Complaint. (Id.) He did neither.

II.     **FACTUAL BACKGROUND**

   A.     **Gahr's First Frivolous Lawsuit Against Heritage.**

Gahr filed his first lawsuit against Heritage, a research and educational institution, in the Superior Court for the District of Columbia and included Katrina Trinko, the Editor-in-Chief for *The Daily Signal*, Heritage's news website, and Professor Robert George, one of Heritage's board members, as individual defendants. (See DC Superior Court Docket for Civil Action No. 2019 ca 002416B.[1]) Gahr accused Heritage and Trinko of engaging in religious discrimination and retaliation by declining to offer him a contract to be a reporter for *The Daily Signal*. (See Second Amended Complaint in DC Superior Court Civil Action No. 2019 ca 002416B.) Gahr spent the duration of that case harassing Heritage, Trinko, and defense counsel. (See Defendant's Motion for a Protective Order Precluding Plaintiff's Abusive Tactics filed in DC Superior Court Civil Action No. 2019 ca 002416B, attached hereto as Exhibit 2.)

Gahr engaged in offensively misogynistic behavior towards Trinko and defense counsel Lauren Goetzl, referring to the two as "pumpkin," "sweetie," and "my little sugar plum." (Id.) He leveled personal attacks on Trinko and defense counsel Daniel Farrington, accusing Trinko of writing "on the level of an eighth grader" and asking Farrington whether he can read. (Id.) Gahr attempted to publicly shame Trinko by sending an email to Heritage's general email inbox and all reporters at *The Daily Caller* in which he wrote, "Uh, Katrina? Sweetie? Does Heritage have an employee gym? If so, you might want to check it out sometime!!!" (Id.) Gahr sent an email to

---

[1] Heritage is not submitting Gahr's DC Superior Court filings as exhibits due to their voluminous nature. Heritage would, however, be pleased to submit them upon the Court's request.

Farrington, the Managing Partner of Goetzl's office, and the Atlanta-based Chairman of Goetzl's law firm falsely accusing her of making misrepresentations to the Court, and then forwarded the email to Goetzl with the message, "I just sent your dream of becoming a partner down the crapper!" (Id.)  On August 9, 2019, Gahr accosted Goetzl outside of the Superior Court after a status conference, chasing and filming her for two blocks.  (Id.)  Gahr later sent the video to reporters and others with the caption "Mendacious Lawyer Lauren Goetzl Runs Away."  (Id.)

Gahr served facially defective subpoenas on Heritage employees purporting to command their attendance at depositions at the National Zoo, requiring unnecessary motions practice to quash them.  (See Exhibit 2; DC Superior Court Docket for Civil Action No. 2019 ca 002416B.) Gahr threatened to drag individuals important to Heritage into the lawsuit even though they had nothing to do with Gahr's claims.  For example, Gahr stated that he planned to "drag [former Congressman Jason Chaffetz] into the lawsuit by subpoenaing him for a deposition" because Congressman Chaffetz spoke at a Heritage event.  (See Exhibit 2.)  Likewise, Gahr announced that he was looking into whether he could sue individuals who serve as panelists at Heritage conferences and stated he planned to use the discovery process in his lawsuit to conduct "ambush telephone interviews" of Heritage's donors and then "go after them."  (Id.)

The Superior Court dismissed Professor George on July 31, 2019 and dismissed the lawsuit in its entirety on October 2, 2019 after Gahr failed to appear for a hearing.  (See DC Superior Court Docket for Civil Action No. 2019 ca 002416B.)  Before dismissing the case, the Court responded to Gahr's abusive conduct by entering a Protective Order prohibiting Gahr from: (1) initiating direct contact with any Heritage employee; (2) conducting third-party discovery without leave of

court; and (3) conducting depositions by oral examination. (See Protective Order Precluding Plaintiff's Abusive Tactics, attached hereto as Exhibit 3.)[2]

### B.     Gahr's Second Frivolous Lawsuit Against Heritage.

Gahr filed a lawsuit in this Court on August 31, 2019 against Heritage, Heritage's President, Kay Coles James, Heritage's Vice President of Communications, Rob Bluey, and Trinko purporting to assert claims under the Civil Rights Act of 1866, Title II of the Civil Rights Act of 1964, and for intentional infliction of emotional distress. (See Amended Complaint, ECF Dkt No. 5.) On February 3, 2020, the Court granted Heritage's Motion to Dismiss.[3] (See Dkt. No. 19.)

During the pendency of this lawsuit Gahr's harassing behavior continued. On January 13, 2020, Gahr sent a letter to James bearing many of the same hallmarks of Gahr's prior abusive conduct. (See Farrington Decl. at ¶ 3, 1/13/20 Ltr. from E. Gahr to K. James, attached thereto as Exhibit B.) In the letter, Gahr called James a "white cracker" and "pumpkin" and Goetzl a "ditzy lawyer." (Id.) He stated that James, Bluey, and Heritage's General Counsel, Christopher Byrnes, were "as subtle as the whites who beat John Lewis over the head," and called Byrnes a "neo-racist schoolyard bully." (Id.) Gahr once again disparaged Trinko's physical appearance. (Id.) Finally, he accused James of spreading "blood libel stained shit all over Heritage" and wrote that reporters have "caught quite a whiff of [her] stench." (Id.) Gahr copied journalists at NBC and *The New York Times* on his letter to James. (See Farrington Decl. at ¶ 3, 1/14/20 Email from E. Gahr to D.

---

[2]     While Gahr's lawsuit against Heritage was pending in Superior Court another Superior Court judge declared Gahr to be a vexatious litigant in an unrelated case. (See August 27, 2019 Order in Gahr v. Betsy Rothstein, Case No. 2018 SC2 003729, attached hereto as Exhibit 4.)

[3]     Gahr did not serve the individual defendants.

Farrington, *et al.*, attached thereto as Exhibit C.)  In his communication to the journalists Gahr called James "a dumb fuck" and "quasi anti-Semite." (Id.)

On January 20, 2020, Gahr wrote to Farrington and copied *The New York Times* with the message "Dan Farrington, around me you seem to have as little self control as many priests do alter boys." (See Farrington Decl. at ¶ 4, 1/20/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit D.)  On January 24, 2020, Gahr indicated he planned to harass individuals scheduled to speak at Heritage events and intimated he would sue speakers who did not respond to him.  (See Farrington Decl. at ¶ 4, 1/24/20 Email from E. Gahr to D. Farrington, *et al.*, attached thereto as Exhibit E.)  On January 30, 2020, Gahr disclosed that he had sent a letter of complaint about James to Attorney General William Barr's home.  (See Farrington Decl. at ¶ 4, 1/30/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit F.)  Gahr stated that "[r]egardless of how the DOJ handles the complaint I am pretty sure I destroyed Kay Cole[s] James [sic] reputation with Bill Barr." (Id.)

On January 31, 2020, Gahr threatened to sign up for Heritage events under an assumed name and disrupt the events.  (See Farrington Decl. at ¶ 4, 1/31/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit G.)  On February 2, 2020 he again threatened to sue anyone who speaks at a Heritage event and does not tell Heritage to allow Gahr to attend.  (See Farrington Decl. at ¶ 5, 2/2/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit H.)  On February 12, 2020, Gahr again referred to Goetzl as "pumpkin" and disclosed he had filed a bar complaint against Byrnes.  (See Farrington Decl. at ¶ 5, 2/12/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit I.)  He also disclosed his idea to disrupt Heritage events by sending in an "army of homeless people" to "do their business" in Heritage's bathrooms.

5

(See Farrington Decl. at ¶ 5, 2/12/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit J.)

On February 14, 2020, Gahr sent an email to the Atlanta-based Chairman of Goetzl's law firm along with several other firm leaders in which he stated that Goetzl's court attire (presumably on the day he chased her down the street) was "like something you might imagine a slutty millennial girl wears to a bar when she tells her friends she wants to 'meet guys.'" (See Farrington Decl. at ¶ 5, 2/14/20 Email from E. Gahr to D. Farrington, *et al.*, attached hereto as Exhibit K.)

    **C.**    **Gahr's Third Frivolous Lawsuit Against Heritage.**

On January 7, 2020, Gahr sued Heritage for $813 in the District of Columbia Superior Court's Small Claims Division alleging that Heritage's defense counsel caused him emotional distress by sending emails to Gahr on which counsel did not copy random third parties as Gahr had demanded. (See Statement of Claim in DC Superior Court Case No. 2020 SC2 000123.) The Superior Court dismissed the lawsuit on January 28, 2020 after Gahr failed to appear for a hearing. (See DC Superior Court Docket for Small Claims Case No. 2020 SC2 000123.)

    **D.**    **Gahr's Fourth Frivolous Lawsuit Against Heritage.**

Gahr filed a fourth lawsuit on January 13, 2020 in Superior Court against Heritage, James, Trinko and Bluey in which he repeats the allegations of religious discrimination and retaliation he made in the previously dismissed Superior Court case. (See Complaint in DC Superior Court Case No. 2020-CA-000282.) Gahr has not served any of the defendants.

**III.**    **LEGAL ANALYSIS**

    **A.**    **Legal Standard for Sanctions Under Fed. R. Civ. P. 11 and the Court's Inherent Powers.**

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, sanctions may be imposed "'where a party files a pleading, motion[,] or other paper with the court for an improper purpose,

6

that is unwarranted by existing law, . . . that is lacking evidentiary support,' or that is not 'reasonably based on belief or a lack of information.'" Ahuruonye v. United States Dep't of Interior, 312 F.Supp.3d 1, 9 (D.D.C. 2018) (alterations in original) (internal citations omitted) (quoting Henok v. Chase Home Fin., LLC, 926 F. Supp. 2d 100, 104 (D.D.C. 2013), then quoting Fed. R. Civ. P. 11(b)(4)).  In addition to, or instead of, imposing sanctions under Rule 11, this Court also has the inherent power "to protect [its] integrity and prevent abuses of the judicial process." Kindig v. Whole Foods Mkt. Grp., Inc., 971 F. Supp. 2d 37, 47 (D.D.C. 2013), aff'd, 608 F. App'x 14 (D.C. Cir. 2015) (quoting Shepherd v. Am. Broadcasting Co., Inc., 62 F.3d 1469, 1474 (D.C. Cir. 1995)); Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co., 271 F. Supp. 2d 151, 154 (D.D.C. 2003) ("When the federal rules alone do not provide courts with enough authority to protect their integrity and prevent abuses of the judicial process, the inherent power to sanction fills the gap.") (citing Shepherd, 62 F.3d at 1474).  "As old as the judiciary itself, the inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, including even dismissals and default judgments." Mikkilineni, 271 F. Supp. 2d at 154 (quoting Shepherd, 62 F.3d at 1472).

    **B.    The Court Should Sanction Gahr.**

A violation of Rule 11 warrants the imposition of a sanction sufficient to "deter repetition of the conduct." Fed. R. Civ. P. 11(c)(4).  "Monetary sanctions are one type of authorized penalty that is purely discretionary and may be imposed whenever a court determines that Rule 11 has been violated, provided that the sanctioned party has been given a notice and an opportunity to respond." Smith v. Scalia, 44 F. Supp. 3d 28, 45 (D.D.C. 2014), aff'd, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015) (citing Fed. R. Civ. P. 11(c)(3); Cobell v. Norton, 211 F.R.D.

7

7, 10 (D.D.C. 2002)).  Gahr's *pro se* status does not immunize him from Rule 11 sanctions.  Id. (citing Fed. R. Civ. P. 11(b); Kurtz v. United States, 779 F. Supp. 2d 50, 51 n. 2 (D.D.C. 2011).  "To impose monetary sanctions against a party under its inherent power, a court must make 'specific finding[s]' that a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' by 'clear and convi[nc]ing evidence.'"  LeFande v. Mische-Hoeges, No. 10-CV-1857 (DLF/GMH), 2018 WL 6620129, at *12 (D.D.C. Dec. 10, 2018) (quoting Priority One Servs., Inc. v. W & T Travel Servs., LLC, 987 F. Supp. 2d 1, 4 (D.D.C. 2013)).  In conducting its review, the Court may consider conduct "occurring beyond the courtroom," such as "misconduct in another court where the misconduct is part of the same case in which sanctions are imposed, or is 'in some way related to the case before the [sanctioning] court.'"  LeFande, 2018 WL 6620129, at *12–13 (quoting first Chambers v. NASCO, Inc., 501 U.S. 32, 57 (1991), then Klein v. Weidner, No. CV 08-3798, 2017 WL 2834260, at *6 (E.D. Pa. June 30, 2017)).

Gahr's misconduct during this case and in connection with his other lawsuits against Heritage demonstrates that he filed this lawsuit for an improper purpose and that it was merely part of a larger harassment campaign against Heritage and its employees.[4]  Gahr has used the litigation process to harass Heritage and its employees, threatened to attend events under false pretenses to disrupt them, threatened to deploy an army of people to disrupt events, and threatened to interfere with Heritage's relationships with speakers and donors by dragging them into the cases as witnesses or co-defendants.  Gahr called Kay Coles James a "dumb fuck" to reporters and sent a letter to the Attorney General with the intent of damaging James' reputation.  In communication with *The New York Times* he likened Farrington to a pedophile.  He harassed women affiliated

---

[4] The Court's ruling on Heritage's Motion to Dismiss demonstrates that Gahr's purported claims were not warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

8

with the cases, in particular Trinko and Goetzl, calling them "pumpkin," "sweetie" and "my little sugar plum" and additionally repeatedly calling Goetzl a "ditzy lawyer." He attempted to shame Trinko's appearance in an email to every reporter at *The Daily Caller*. He contacted the Chairman of Goetzl's firm with the stated intent of damaging Goetzl's career, physically chased Goetzl down the street after a court appearance, and just last week sent a message to Goetzl and a broad sampling of her law firm's leaders saying that Goetzl dressed like a "slut." There is no proper purpose for such behavior.

### C. Monetary Sanctions Are Appropriate and Gahr Has the Ability to Pay Them.

History demonstrates that a non-monetary sanction would not deter Gahr from continuing his misconduct. The Superior Court entered a protective order in response to his abusive behavior and it did not deter him. Heritage cautioned him that it would move for sanctions in this case and his misconduct has continued unabated.

Under the circumstances, Gahr's conduct warrants the imposition of sanctions, even though he is *pro se*. See, e.g., Kindig v. Whole Foods Mkt. Grp., Inc., 9710 F. Supp. 2d 37, 48 (D.D.C. 2013), aff'd, 608 F. App'x 14 (D.C. Cir. 2015) (imposing sanctions against pro se plaintiff who insulted corporate defendant's integrity and "demonstrated an utter disregard for the civility of the Courtroom process and the courtesy with which opposing parties should treat each other."); Mikkilineni v. Penn Nat. Mut. Cas. Ins. Co., 271 F. Supp. 2d 151, 155 (D.D.C. 2003) (imposing sanctions against pro se plaintiff and citing the plaintiff's previous misconduct during cases in other jurisdictions).

Heritage respectfully submits that an appropriate sanction would be the legal fees and costs Heritage has incurred in defending itself against the present lawsuit. Should the Court grant

9

Heritage's Motion for Sanctions, Heritage will submit a statement of fees and costs for the Court's review to include fees incurred in briefing this Motion and preparing a statement of fees and costs.

Finally, Gahr can pay a monetary sanction. He has paid the filing fees for all of his lawsuits and has not suggested he has financial difficulties. Moreover, on February 2, 2020, Gahr indicated he intended to use inherited assets to take out a full-page advertisement in the Washington Post critical of Heritage. (See Farrington Decl., at Exhibit H.) Accordingly, Gahr appears to have the resources to pay a monetary sanction.

## IV.   CONCLUSION

For the foregoing reasons, Heritage respectfully requests the Court grant its Motion for Sanctions.

DATED: February 18, 2020

Respectfully submitted,

*/s/ Daniel E. Farrington*

Daniel E. Farrington (#471403)
Fisher & Phillips LLP
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
Tel. (301) 951-1538
Fax (301) 880-5031
dfarrington@fisherphillips.com

*Counsel for Defendant*
*The Heritage Foundation*